UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LENA MINERVINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| CYSTIC FIBROSIS FOUNDATION, | ) |
| | ) |
| Defendant | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Lena Minervino ("Plaintiff" or "Minervino"), by and through undersigned counsel, hereby complains against Defendant Cystic Fibrosis Foundation ("Defendant" or "CFF"), as follows:

**JURISDICTION AND PARTIES**

1. This action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.*

2. Plaintiff Minervino is a United States citizen residing in the City of Portland, County of Cumberland, and State of Maine.

3. Defendant CFF is a duly organized Delaware nonprofit corporation.

4. Minervino worked for CFF as a Development Director.

5. At all times herein relevant, Plaintiff was an "employee" of CFF as that term is defined under the ADA and the MHRA.

1

6. Defendant has several thousand employees.

7. This Court has subject matter jurisdiction over Minervino's claims pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

8. Plaintiff filed a timely Charge of Discrimination against Defendant with the Maine Human Rights Commission ("MHRC"), alleging that Defendant subjected her to unlawful disability discrimination and retaliation.

9. On April 14, 2021, the MHRC issued a Notice of Right to Sue letter pursuant to 5 M.R.S. § 4621.

## FACTUAL ALLEGATIONS

10. CFF is a national non-profit organization whose mission is to "cure cystic fibrosis and to provide all people with CF the opportunity to lead long, fulfilling lives by funding research and drug development, partnering with the CF community, and advancing high-quality, specialized care."

11. Minervino began working for CFF on May 5, 2017 as a Development Director for the organization's Northern New England Chapter, based in Portland, Maine.

12. The Development Director position involved fundraising activities, solicitation of donations, and networking to accomplish fundraising goals in Maine and Southern New Hampshire.

13. When CFF hired Minervino, the Maine-based position was flexible, and she was permitted to work remotely.

14. Minervino met all fundraising goals and performed the position at a high level. She received positive performance reviews.

15. Minervino sustained an injury in February of 2018 causing post-concussive syndrome. As a result, Minervino went out of work on medical leave under FMLA.

16. The post-concussive syndrome manifested in symptoms such as sensitivity to light and sound, inability to focus eyes, nausea, dizziness, memory and recall issues, headaches, and migraines.

17. Minervino experienced difficulty sleeping and performing other activities of daily living as a result of her injury.

18. Minervino's medical providers released her to return to work part-time in November of 2018. However, CFF refused to allow her to return to work in any capacity without an estimated date to be released to return to work full time.

19. Minervino returned to work part-time for three days per week beginning January 15, 2019. When she returned to work part-time, she learned that CFF had increased her fundraising goals. The fundraising goals were increased so drastically that Minervino would not be able to meet them even if she were working full time.

20. At the time, no one else working for CFF had their fundraising goal increased as drastically as Minervino. Plaintiff's colleagues were surprised at the drastic increase in her fundraising goals.

21. CFF also assigned additional duties to Minervino that were not her responsibility before taking a medical leave of absence, such as responsibility for increasing fundraising for CFF's annual fund.

22. While Minervino was communicating with CFF management about her disability-related work restrictions, she learned that CFF was transferring her to Nashua, New Hampshire and away from Portland, Maine.

23. Minervino was not allowed to attend fundraising events such as the Annual Dinner and Tomorrow's Leaders Event, which obstructed her ability to fundraise.

24. Minervino went back to work full time on March 1, 2019, with work restrictions limiting her to 3 hours of screen time each day, fewer video conferences, and a maximum of 5 workdays per week, with 8 hours each day and a one-hour lunch break. These work restrictions were consistent with how Minervino performed her job duties prior to her medical leave of absence.

25. CFF refused to provide the accommodations Minervino requested and did not take the restrictions seriously.

26. CFF expected Minervino to work longer than 8 hours per day and she was not allowed to decide which days she worked in the Nashua office. She was also expected to use computer screens for more than 3 hours per day.

27. As a result of these expectations, Minervino's post-concussive symptoms worsened, and she went back out on a medical leave of absence on April 23, 2019.

28. On June 3, 2019, CFF terminated Minervino's employment, claiming that the organization could not accommodate her restrictions, including the request to work remotely.

29. The essential functions of Minervino's position with CFF could have been performed successfully with the restrictions outlined by her medical provider.

30. CFF claimed that Minervino was being terminated because the organization could not accommodate her request to work remotely. However, shortly after Minervino's termination, CFF posted a job listing for the Development Director position, which allowed for working remotely. Working remotely would have provided Minervino with the ability to perform the job within her restrictions.

31. CFF knowingly and willfully violated Minervino's state and federally protected rights.

## COUNT I – DISABILITY DISCRIMINATION UNDER THE ADA
### (42 U.S.C. § 12101 *et seq.*)

32. Plaintiff repeats the allegations contained in Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

33. At all times herein relevant, Minervino was a qualified individual with a disability within the meaning of the ADA.

34. Defendant engaged in unlawful disability discrimination against Minervino in violation of the ADA.

35. Defendant's stated reasons for changing the conditions of Minervino's employment, as well as her termination, were pretext for disability discrimination.

36. Defendant regarded Minervino as being disabled.

37. Minervino has a record of a disability.

38. Defendant failed to engage in the appropriate interactive process with Minervino, despite being aware of and taking adverse action against her as a result of Plaintiff's known disability.

39. Defendant failed to provide Minervino with all of the reasonable accommodations that were necessary for her disability in order to perform the essential functions of her job.

40. As a result of Defendant's discriminatory actions, Minervino has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Lena Minervino requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT II – RETALIATION UNDER THE ADA
### (42 U.S.C. § 12101 *et seq.*)

41. Plaintiff repeats the allegations contained in Paragraphs 1 through 41 of the Complaint as if fully stated herein.

42. Throughout her employment, Defendant retaliated against Minervino for requesting accommodations for her disability.

43. Defendant took adverse action against Minervino for exercising her protected rights under the ADA.

44. As a result of Defendant's retaliatory actions, Minervino has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Lena Minervino requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT III – VIOLATION OF THE MAINE HUMAN RIGHTS ACT
**(5 M.R.S. § 4571 *et seq*.)**

45. Plaintiff repeats the allegations contained in Paragraphs 1 through 44 as if fully stated herein.

46. For all of the reasons set forth in Count I above, unlawful discrimination against Plaintiff has taken place within the meaning of the Maine Human Rights Act.

47. For all of the reasons set forth in Count II above, unlawful retaliation against Plaintiff has taken place within the meaning of the Maine Human Rights Act.

WHEREFORE, Plaintiff Lena Minervino requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### JURY TRIAL DEMAND

Plaintiff Lena Minervino hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Dated: July 10, 2021 /s/ *Laura H. White*

_____
Laura H. White, Bar No. 4025
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
*lwhite@whiteandquinlan.com*


/s/ *Danielle Quinlan*

_____
Danielle Quinlan, Bar No. 5480
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
*dquinlan@whiteandquinlan.com*